**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**


**TRIANGLE PARK, LLC,**                                     08-CV-1256-BR

        **Plaintiff,**

                                          **OPINION AND ORDER**

**v.**

**INDIAN HARBOR INSURANCE
COMPANY,**

        **Defendant.**


**STEPHEN M. FELDMAN**
Perkins Coie, LLP
1120 N.W. Couch Street
10th Floor
Portland, OR 97209-4128
(503) 727-2058

        Attorneys for Plaintiff

**JOHN LORING LANGSLET**
Martin Bischoff Templeton Langslet & Hoffman
888 S.W. Fifth Avenue
Suite 900
Portland, OR 97204
(503) 224-3113


1 - OPINION AND ORDER

**MAX H. STERN**
**JESSICA E. LA LONDE**
Duane Morris, LLP
Spear Tower, Suite 2000
One Market
San Francisco, CA 94105-1104
(415) 957-3000

          Attorneys for Defendant


**BROWN, Judge.**

     This matter comes before the Court on that portion of
Defendant Indian Harbor Insurance Company's Motion (#29) to
Compel relating to correspondence and other items on Plaintiff's
privilege log described as "regarding negotiations with EPA."
For the reasons that follow, the Court **DENIES** that part of
Defendant's Motion.


                         <u>BACKGROUND</u>

     The following facts are taken from Plaintiff Triangle Park,
LLC's First Amended Complaint:

     From May 1997 to December 2008 Plaintiff owned property at
5828 North Van Houten Place, Portland, Oregon.

     In December 2000 Plaintiff received a General Notice Letter
(GNL) from the United States Environmental Protection Agency
(EPA) notifying Plaintiff "of potential liability, as defined by
Section 107(a) of the Comprehensive Environmental Response,
Compensation and Liability Act, 42 U.S.C. § 9607(a), as amended


2 - OPINION AND ORDER

(CERCLA), with respect to" the North Van Houten Place property.

In 2005 Plaintiff sought to obtain insurance to protect itself from potential environmental liability associated with its ownership and/or operation of the North Van Houten Place property.

On June 14, 2005, Plaintiff purchased from Defendant Indian Harbor a Pollution and Remediation Legal Liability Policy with an applicable period of June 14, 2005, through June 14, 2015.

On August 9, 2006, Plaintiff received a "Supplemental Notice of Potential Liability" from the EPA as to the North Van Houten Place property in which the EPA "confirm[ed Plaintiff's] potential responsibility for response costs incurred and to be incurred in the Portland Harbor Superfund Site." The EPA proposed "to resolve [Plaintiff's] liability through a peripheral party cashout settlement under CERCLA Section 122(h), 42 U.S.C. § 9622(h)."

On October 16, 2006, Plaintiff notified Defendant of "the claim being made against Plaintiff" by the EPA. On October 27, 2006, Defendant acknowledged receipt of Plaintiff's notification and advised Plaintiff that "it does not appear that coverage will be afforded for this claim because the claim was first made in December 2000, which is prior to the inception of the policy." Nevertheless, Defendant's "investigation of coverage [was] continuing and a final coverage determination [had not] been

3 - OPINION AND ORDER

made."

On December 4, 2006, Plaintiff advised Defendant that it believed Defendant's preliminary denial of coverage was "without merit" because the December 2000 letter from the EPA did not constitute a claim within the meaning of the policy.

On February 1, 2008, Defendant informed Plaintiff that it had made a final coverage determination and was denying coverage for Plaintiff's claim related to the North Van Houten Place property because the EPA's claim against Plaintiff "was first made in December 2000, when [the EPA] sent its initial PRP letter[, and,] therefore, the EPA's claim was not first made during the policy period."

Plaintiff investigated and defended itself against the EPA's claim.

After negotiating a settlement with the EPA, Plaintiff informed Defendant in March 2008 that Plaintiff intended to accept the EPA's settlement demand.  Following approval of the settlement by the United States Department of Justice (USDOJ), Plaintiff, the EPA, and the USDOJ executed a settlement agreement.

On October 24, 2008, Plaintiff filed a Complaint in this Court against Defendant Indian Harbor; XL Capital, LTD; XL Speciality Insurance Company; and XL Environmental, Inc., alleging claims for breach of contract, breach of duty of good

faith and fair dealing, breach of fiduciary duty, fraudulent misrepresentation, and negligent misrepresentation.

After a mandatory public comment period, Plaintiff's settlement agreement with the EPA and USDOJ was finalized on December 17, 2008.

On March 24, 2009, Plaintiff filed a First Amended Complaint asserting the same claims as in its original Complaint, but removing XL Capital, LTD; XL Speciality Insurance Company; and XL Environmental, Inc., as Defendants.

On February 24, 2010, Plaintiff filed a Motion to Compel Production of Documents in which it sought an order compelling Defendant to produce:

1.   Communications between Defendant and the law firm of Duane Morris prior to the denial of coverage and internal Indian Harbor communications concerning pre-denial communications with Duane Morris;

2.   Information relating to reserves set by Defendant;

3.   Reinsurance Information;

4.   Information relating to whether Indian Harbor has previously construed general notice letters of the sort received by Plaintiff to be claims under the policy.

5.   Promised, but not-yet-produced, documents.

On February 26, 2010, Defendant filed a Cross-Motion to Compel the following documents from Plaintiff:

1.   Unredacted copies of the Perkins Coie bills produced by Plaintiff that "allegedly

5 - OPINION AND ORDER

substantiate" some of Plaintiff's damages,

2.   All correspondence and other items on the
     privilege log that are described as
     "regarding negotiations with EPA,"

3.   Letters from the EPA to other Zidell
     Companies and those companies' letters to
     their brokers and/or insurers regarding the
     EPA letter(s),

4.   A signed copy of the December 2000 letter
     Plaintiff received from the EPA,

5.   Correspondence between Plaintiff (or its
     agents) and insurers/brokers regarding the
     letters Plaintiff received in December 2000,

6.   Correspondence between Plaintiff (or its
     agents) and the EPA regarding any letters
     sent by the EPA in December 2000, and

7.   Evidence of payment of legal fees.

On March 9, 2010, the Court entered an Order directing the

parties to confer in an effort to narrow the issues in dispute

and to file a Joint Statement itemizing their outstanding

discovery issues.

On March 15, 2010, the parties filed a Joint Statement

advising the Court that the following issues still required

resolution by the Court:

1.   Plaintiff's request for Defendant to produce
     Communications between Defendant and the law firm
     of Duane Morris prior to the denial of coverage
     and internal Indian Harbor communications
     concerning pre-denial communications with Duane
     Morris,

2.   Defendant's request for Plaintiff to produce all
     correspondence and other items on the privilege
     log that are described as "regarding negotiations

with EPA," and

3.    Defendant's request for Plaintiff to produce
letters from the EPA to other Zidell Companies and
those companies' letters to their brokers and/or
insurers regarding the EPA letter(s).

On March 31, 2010, the Court held a hearing on the
unresolved issues.  The Court denied Defendant's request to
compel production of letters from the EPA to other Zidell
Companies and those companies' letters to their brokers and/or
insurers regarding the EPA letter(s), took under advisement
Defendant's request for all correspondence and other items on the
privilege log "regarding negotiations with EPA," and set an
evidentiary hearing as to Plaintiff's remaining request.


## DISCUSSION

Defendant seeks an order compelling Plaintiff to produce all
correspondence and other items "regarding negotiations with EPA"
on the ground that Plaintiff implicitly waived the attorney-
client privilege and work-product protection as to these
documents because Plaintiff "put its legal bills and
communications with its counsel regarding the EPA settlement
directly at issue" when it brought this action to recover its
defense and settlement costs.  Defendant relies on *Chevron
Corporation v. Pennzoil Company* to support its assertion that a
party can waive the attorney-client and work-product privileges
when it puts matters related to those communications at issue.

*See* 974 F.2d 1156 (9th Cir. 1992).

In *Chevron* the Ninth Circuit concluded the defendant had waived the attorney-client privilege as to its communications with its lawyers related to the settlement of an earlier action. *Id. at* 1162-63.  The Ninth Circuit held when "a party raises a claim which in fairness requires disclosure of the protected communication, the [attorney-client] privilege may be implicitly waived."  *Id.* at 1162.  The facts in *Chevron*, however, are distinguishable from the facts here.  In *Chevron* the defendant asserted it took a particular position at settlement "pursuant to advice of its lawyers," and "its tax position [was] reasonable because it was based on advice of counsel."  *Id.*  In particular, the Ninth Circuit noted the attorney-client privilege "may not be used both as a sword and a shield."  *Id.*  Here Plaintiff has not alleged it entered into the settlement agreement with the EPA pursuant to advice of counsel or that it believed the settle-ment with the EPA was reasonable on the advice of counsel.  Accordingly, Plaintiff does not seek to use "advice of counsel" as both a sword and a shield.

Defendant also relies on a number of cases from district courts in the Ninth Circuit and courts from other circuits to support its assertion that Plaintiff implicitly waived the attorney-client privilege as to documents "regarding negotiations with the EPA."  In those cases, however, the Court notes either

the advice of counsel was "inextricably interwoven with the issue
of . . . liability," *Charlotte Motor Speedway, Incorporated v.
International Insurance Company*, 125 F.R.D. 127, 130 (M.D.N.C.
1989), or the court had already held the insurance company was
liable for the plaintiff's costs in defending an action.  *See,
e.g., Concept Enter., Inc. v. Hartford Ins. Co. of the Midwest*,
No. CV007267NM(JWJX), 2001 WL 34050685, at *1 (C.D. Cal. May 22,
2001)(court concluded the defendant owed the plaintiff a duty to
defend in part and allowed the defendant discovery as to the
plaintiff's legal bills to determine proper allocation of
requested fees).  These cases, therefore, are of limited
relevance to this case.

Plaintiff relies on *Northrup Commons Homeowners' Association
v. Maryland Casualty Insurance Company* to support its assertion
that it has not waived its attorney-client privilege as to the
documents sought by Defendant.  *See* 05-CV-1425-ST (D. Or.
Mar. 15, 2010)  In *Northrup* the plaintiff alleged the defendant
breached its duty to defend and to indemnify the plaintiff for
the underlying litigation.  *Id*. at 2.  The defendant issued
subpoenas in which it sought communications between the
plaintiffs and counsel regarding liability assessments and
settlement values in the underlying litigation.  The plaintiff
moved to quash those subpoenas on the basis of attorney-client
privilege.  The defendant asserted the plaintiff had waived that

9 - OPINION AND ORDER

privilege by placing the merits of its claims and defenses in the
underlying litigation at issue in the current action.  The court,
however, held the plaintiff did not implicitly waive the
attorney-client privilege as to the documents at issue:

> Here advice of counsel is not necessary to prove
> the reasonableness of [the] settlement.  [The
> plaintiff] has not pleaded reliance on any
> information or advice contained in the privileged
> documents and emphatically denies that it intends
> to use any attorney-client privileged
> communications to prove that [the] settlement was
> reasonable.  Instead, it intends to rely solely on
> expert opinions and other objective evidence.
> Therefore, communications with counsel . . . [to
> any] party to the underlying litigation are not
> relevant to prove that the settlement was
> reasonable.  Although obtaining evaluations as to
> liability and damages by attorneys in the
> underlying case may make it easier for [the
> defendant] to develop its case, "such is not the
> criteria for a waiver of the attorney-client or
> work product privileges."  *NL Industris, Inc.*, 144
> FRD at 233.

*Id.* at 9.  Although Oregon courts have not addressed the standard
a court should apply to determine whether a settlement is
reasonable, a number of other courts have applied an "objective,
reasonable person standard."  *Id.* at 5 (citations omitted).  In
*Northrup Commons,* Magistrate Judge Stewart found the
reasonableness of a settlement is an objective inquiry, and,
therefore, documents protected by the attorney-client privilege
are not discoverable:

> "If counsel's advice were required to be
> disclosed, it would still not be binding on the
> insurance company.  Instead, proof of
> reasonableness is ordinarily established through

10 - OPINION AND ORDER

> the use of expert witnesses to testify about such
> matters as the extent of the defendant's
> liability, the reasonableness of the damages
> amount in comparison with compensatory awards in
> other cases, and the expense which would have been
> required for the settling defendants to defend the
> lawsuit."

*Id*. at 7 (quoting *Chomat v. N. Ins. Co. of New York*, 919 So. 2d

535, 538 (Fla. App. 2006). Judge Stewart noted the "at-issue"

waiver of attorney-client privilege is a narrow exception and "is

limited to circumstances in which the privilege-holder injects

the privileged material itself into the case, such that the

information is actually required for resolution of the issue."

*Id*. (quotation omitted). "Merely seeking coverage does not place

litigation files at issue, but only places the underlying facts

at issue." *Id.* (citation omitted). Indeed,

> [i]f admitting that one relied on legal advice in
> making a legal decision put the communications
> relating to the advice at issue, such advice would
> be at issue whenever the legal decision was
> litigated. If that were true, the at issue
> doctrine would severely erode the attorney-client
> privilege and undermine the public policy
> considerations on which it is based.

*Id*. at 9 (quotation omitted).

This Court finds the reasoning in *Northrup* persuasive and

applies it here. Accordingly, the Court concludes Plaintiff has

not implicitly waived attorney-client privilege as to documents

generally protected by attorney-client privilege or as to

documents relating to settlement negotiations with the EPA.

Whether Plaintiff's settlement with the EPA was reasonable is an

11 - OPINION AND ORDER

objective inquiry that can be undertaken without reviewing documents protected by attorney-client privilege.

The Court, therefore, denies Defendants' Motion to Compel as to its request for all correspondence and other items on the privilege log "regarding negotiations with EPA."

### CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion (#29) as to its request for all correspondence and other items on the privilege log "regarding negotiations with EPA."

IT IS SO ORDERED.

DATED this 30th day of April, 2010.


/s/ Anna J. Brown
_____

ANNA J. BROWN
United States District

12 - OPINION AND ORDER

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

**TRIANGLE PARK, LLC,**                                    08-CV-1256-BR

        **Plaintiff,**

                                              **OPINION AND ORDER**

**v.**

**INDIAN HARBOR INSURANCE
COMPANY,**

        **Defendant.**

**STEPHEN M. FELDMAN**
Perkins Coie, LLP
1120 N.W. Couch Street
10th Floor
Portland, OR 97209-4128
(503) 727-2058

        Attorneys for Plaintiff

**JOHN LORING LANGSLET**
Martin Bischoff Templeton Langslet & Hoffman
888 S.W. Fifth Avenue
Suite 900
Portland, OR 97204
(503) 224-3113

1 - OPINION AND ORDER

**MAX H. STERN**
**JESSICA E. LA LONDE**
Duane Morris, LLP
Spear Tower, Suite 2000
One Market
San Francisco, CA 94105-1104
(415) 957-3000

       Attorneys for Defendant

**BROWN, Judge.**

       This matter comes before the Court on that portion of
Defendant Indian Harbor Insurance Company's Motion (#29) to
Compel relating to correspondence and other items on Plaintiff's
privilege log described as "regarding negotiations with EPA."
For the reasons that follow, the Court **DENIES** that part of
Defendant's Motion.


<u>**BACKGROUND**</u>

       The following facts are taken from Plaintiff Triangle Park,
LLC's First Amended Complaint:

       From May 1997 to December 2008 Plaintiff owned property at
5828 North Van Houten Place, Portland, Oregon.

       In December 2000 Plaintiff received a General Notice Letter
(GNL) from the United States Environmental Protection Agency
(EPA) notifying Plaintiff "of potential liability, as defined by
Section 107(a) of the Comprehensive Environmental Response,
Compensation and Liability Act, 42 U.S.C. § 9607(a), as amended

2 - OPINION AND ORDER

(CERCLA), with respect to" the North Van Houten Place property.

In 2005 Plaintiff sought to obtain insurance to protect itself from potential environmental liability associated with its ownership and/or operation of the North Van Houten Place property.

On June 14, 2005, Plaintiff purchased from Defendant Indian Harbor a Pollution and Remediation Legal Liability Policy with an applicable period of June 14, 2005, through June 14, 2015.

On August 9, 2006, Plaintiff received a "Supplemental Notice of Potential Liability" from the EPA as to the North Van Houten Place property in which the EPA "confirm[ed Plaintiff's] potential responsibility for response costs incurred and to be incurred in the Portland Harbor Superfund Site." The EPA proposed "to resolve [Plaintiff's] liability through a peripheral party cashout settlement under CERCLA Section 122(h), 42 U.S.C. § 9622(h)."

On October 16, 2006, Plaintiff notified Defendant of "the claim being made against Plaintiff" by the EPA. On October 27, 2006, Defendant acknowledged receipt of Plaintiff's notification and advised Plaintiff that "it does not appear that coverage will be afforded for this claim because the claim was first made in December 2000, which is prior to the inception of the policy." Nevertheless, Defendant's "investigation of coverage [was] continuing and a final coverage determination [had not] been

3 - OPINION AND ORDER

made."

On December 4, 2006, Plaintiff advised Defendant that it believed Defendant's preliminary denial of coverage was "without merit" because the December 2000 letter from the EPA did not constitute a claim within the meaning of the policy.

On February 1, 2008, Defendant informed Plaintiff that it had made a final coverage determination and was denying coverage for Plaintiff's claim related to the North Van Houten Place property because the EPA's claim against Plaintiff "was first made in December 2000, when [the EPA] sent its initial PRP letter[, and,] therefore, the EPA's claim was not first made during the policy period."

Plaintiff investigated and defended itself against the EPA's claim.

After negotiating a settlement with the EPA, Plaintiff informed Defendant in March 2008 that Plaintiff intended to accept the EPA's settlement demand.  Following approval of the settlement by the United States Department of Justice (USDOJ), Plaintiff, the EPA, and the USDOJ executed a settlement agreement.

On October 24, 2008, Plaintiff filed a Complaint in this Court against Defendant Indian Harbor; XL Capital, LTD; XL Speciality Insurance Company; and XL Environmental, Inc., alleging claims for breach of contract, breach of duty of good

faith and fair dealing, breach of fiduciary duty, fraudulent misrepresentation, and negligent misrepresentation.

After a mandatory public comment period, Plaintiff's settlement agreement with the EPA and USDOJ was finalized on December 17, 2008.

On March 24, 2009, Plaintiff filed a First Amended Complaint asserting the same claims as in its original Complaint, but removing XL Capital, LTD; XL Speciality Insurance Company; and XL Environmental, Inc., as Defendants.

On February 24, 2010, Plaintiff filed a Motion to Compel Production of Documents in which it sought an order compelling Defendant to produce:

> 1. Communications between Defendant and the law firm of Duane Morris prior to the denial of coverage and internal Indian Harbor communications concerning pre-denial communications with Duane Morris;
>
> 2. Information relating to reserves set by Defendant;
>
> 3. Reinsurance Information;
>
> 4. Information relating to whether Indian Harbor has previously construed general notice letters of the sort received by Plaintiff to be claims under the policy.
>
> 5. Promised, but not-yet-produced, documents.

On February 26, 2010, Defendant filed a Cross-Motion to Compel the following documents from Plaintiff:

> 1. Unredacted copies of the Perkins Coie bills produced by Plaintiff that "allegedly

5 - OPINION AND ORDER

substantiate" some of Plaintiff's damages,

2.    All correspondence and other items on the
      privilege log that are described as
      "regarding negotiations with EPA,"

3.    Letters from the EPA to other Zidell
      Companies and those companies' letters to
      their brokers and/or insurers regarding the
      EPA letter(s),

4.    A signed copy of the December 2000 letter
      Plaintiff received from the EPA,

5.    Correspondence between Plaintiff (or its
      agents) and insurers/brokers regarding the
      letters Plaintiff received in December 2000,

6.    Correspondence between Plaintiff (or its
      agents) and the EPA regarding any letters
      sent by the EPA in December 2000, and

7.    Evidence of payment of legal fees.

On March 9, 2010, the Court entered an Order directing the

parties to confer in an effort to narrow the issues in dispute

and to file a Joint Statement itemizing their outstanding

discovery issues.

On March 15, 2010, the parties filed a Joint Statement

advising the Court that the following issues still required

resolution by the Court:

1.    Plaintiff's request for Defendant to produce
      Communications between Defendant and the law firm
      of Duane Morris prior to the denial of coverage
      and internal Indian Harbor communications
      concerning pre-denial communications with Duane
      Morris,

2.    Defendant's request for Plaintiff to produce all
      correspondence and other items on the privilege
      log that are described as "regarding negotiations

with EPA," and

3.    Defendant's request for Plaintiff to produce
      letters from the EPA to other Zidell Companies and
      those companies' letters to their brokers and/or
      insurers regarding the EPA letter(s).

On March 31, 2010, the Court held a hearing on the

unresolved issues.  The Court denied Defendant's request to

compel production of letters from the EPA to other Zidell

Companies and those companies' letters to their brokers and/or

insurers regarding the EPA letter(s), took under advisement

Defendant's request for all correspondence and other items on the

privilege log "regarding negotiations with EPA," and set an

evidentiary hearing as to Plaintiff's remaining request.


## DISCUSSION

Defendant seeks an order compelling Plaintiff to produce all

correspondence and other items "regarding negotiations with EPA"

on the ground that Plaintiff implicitly waived the attorney-

client privilege and work-product protection as to these

documents because Plaintiff "put its legal bills and

communications with its counsel regarding the EPA settlement

directly at issue" when it brought this action to recover its

defense and settlement costs.  Defendant relies on *Chevron*

*Corporation v. Pennzoil Company* to support its assertion that a

party can waive the attorney-client and work-product privileges

when it puts matters related to those communications at issue.

7 - OPINION AND ORDER

*See* 974 F.2d 1156 (9th Cir. 1992).

In *Chevron* the Ninth Circuit concluded the defendant had waived the attorney-client privilege as to its communications with its lawyers related to the settlement of an earlier action. *Id. at* 1162-63.  The Ninth Circuit held when "a party raises a claim which in fairness requires disclosure of the protected communication, the [attorney-client] privilege may be implicitly waived."  *Id.* at 1162.  The facts in *Chevron*, however, are distinguishable from the facts here.  In *Chevron* the defendant asserted it took a particular position at settlement "pursuant to advice of its lawyers," and "its tax position [was] reasonable because it was based on advice of counsel."  *Id.*  In particular, the Ninth Circuit noted the attorney-client privilege "may not be used both as a sword and a shield."  *Id.*  Here Plaintiff has not alleged it entered into the settlement agreement with the EPA pursuant to advice of counsel or that it believed the settle-ment with the EPA was reasonable on the advice of counsel.  Accordingly, Plaintiff does not seek to use "advice of counsel" as both a sword and a shield.

Defendant also relies on a number of cases from district courts in the Ninth Circuit and courts from other circuits to support its assertion that Plaintiff implicitly waived the attorney-client privilege as to documents "regarding negotiations with the EPA."  In those cases, however, the Court notes either

8 - OPINION AND ORDER

the advice of counsel was "inextricably interwoven with the issue
of . . . liability," *Charlotte Motor Speedway, Incorporated v.
International Insurance Company*, 125 F.R.D. 127, 130 (M.D.N.C.
1989), or the court had already held the insurance company was
liable for the plaintiff's costs in defending an action. *See,
e.g., Concept Enter., Inc. v. Hartford Ins. Co. of the Midwest*,
No. CV007267NM(JWJX), 2001 WL 34050685, at *1 (C.D. Cal. May 22,
2001)(court concluded the defendant owed the plaintiff a duty to
defend in part and allowed the defendant discovery as to the
plaintiff's legal bills to determine proper allocation of
requested fees).  These cases, therefore, are of limited
relevance to this case.

Plaintiff relies on *Northrup Commons Homeowners' Association
v. Maryland Casualty Insurance Company* to support its assertion
that it has not waived its attorney-client privilege as to the
documents sought by Defendant.  *See* 05-CV-1425-ST (D. Or.
Mar. 15, 2010)  In *Northrup* the plaintiff alleged the defendant
breached its duty to defend and to indemnify the plaintiff for
the underlying litigation.  *Id*. at 2.  The defendant issued
subpoenas in which it sought communications between the
plaintiffs and counsel regarding liability assessments and
settlement values in the underlying litigation.  The plaintiff
moved to quash those subpoenas on the basis of attorney-client
privilege.  The defendant asserted the plaintiff had waived that

9 - OPINION AND ORDER

privilege by placing the merits of its claims and defenses in the underlying litigation at issue in the current action.  The court, however, held the plaintiff did not implicitly waive the attorney-client privilege as to the documents at issue:

> Here advice of counsel is not necessary to prove the reasonableness of [the] settlement.  [The plaintiff] has not pleaded reliance on any information or advice contained in the privileged documents and emphatically denies that it intends to use any attorney-client privileged communications to prove that [the] settlement was reasonable.  Instead, it intends to rely solely on expert opinions and other objective evidence. Therefore, communications with counsel . . . [to any] party to the underlying litigation are not relevant to prove that the settlement was reasonable.  Although obtaining evaluations as to liability and damages by attorneys in the underlying case may make it easier for [the defendant] to develop its case, "such is not the criteria for a waiver of the attorney-client or work product privileges."  *NL Industris, Inc.*, 144 FRD at 233.

*Id*. at 9.  Although Oregon courts have not addressed the standard a court should apply to determine whether a settlement is reasonable, a number of other courts have applied an "objective, reasonable person standard." *Id*. at 5 (citations omitted).  In *Northrup Commons,* Magistrate Judge Stewart found the reasonableness of a settlement is an objective inquiry, and, therefore, documents protected by the attorney-client privilege are not discoverable:

> "If counsel's advice were required to be disclosed, it would still not be binding on the insurance company.  Instead, proof of reasonableness is ordinarily established through

> the use of expert witnesses to testify about such
> matters as the extent of the defendant's
> liability, the reasonableness of the damages
> amount in comparison with compensatory awards in
> other cases, and the expense which would have been
> required for the settling defendants to defend the
> lawsuit."

*Id*. at 7 (quoting *Chomat v. N. Ins. Co. of New York*, 919 So. 2d 535, 538 (Fla. App. 2006). Judge Stewart noted the "at-issue" waiver of attorney-client privilege is a narrow exception and "is limited to circumstances in which the privilege-holder injects the privileged material itself into the case, such that the information is actually required for resolution of the issue." *Id*. (quotation omitted). "Merely seeking coverage does not place litigation files at issue, but only places the underlying facts at issue." *Id.* (citation omitted). Indeed,

> [i]f admitting that one relied on legal advice in
> making a legal decision put the communications
> relating to the advice at issue, such advice would
> be at issue whenever the legal decision was
> litigated. If that were true, the at issue
> doctrine would severely erode the attorney-client
> privilege and undermine the public policy
> considerations on which it is based.

*Id*. at 9 (quotation omitted).

This Court finds the reasoning in *Northrup* persuasive and applies it here. Accordingly, the Court concludes Plaintiff has not implicitly waived attorney-client privilege as to documents generally protected by attorney-client privilege or as to documents relating to settlement negotiations with the EPA. Whether Plaintiff's settlement with the EPA was reasonable is an

11 - OPINION AND ORDER

objective inquiry that can be undertaken without reviewing documents protected by attorney-client privilege.

The Court, therefore, denies Defendants' Motion to Compel as to its request for all correspondence and other items on the privilege log "regarding negotiations with EPA."

**CONCLUSION**

For these reasons, the Court **DENIES** Defendant's Motion (#29) as to its request for all correspondence and other items on the privilege log "regarding negotiations with EPA."

IT IS SO ORDERED.

DATED this 30th day of April, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District

12 - OPINION AND ORDER